<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2347

                 USED TIRE INTERNATIONAL, INC.,

                     Plaintiff, Appellant,

                               v.

                      MANUEL DIAZ-SALDAA,

                      Defendant, Appellee.

                      ____________________

No. 97-2348

                 USED TIRE INTERNATIONAL, INC.,

                      Plaintiff, Appellee,

                               v.

                      MANUEL DIAZ-SALDAA,

                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                      ____________________

                             Before

               Selya and Boudin, Circuit Judges,

and Schwarzer, Senior District Judge.

                     _____________________

    Sylvia Roger-Stefani, Assistant Solicitor General, with whom
Carlos Lugo-Fiol, Solicitor General, and Edda Serrano-Blasini,
Deputy Solicitor General, Federal Litigation Division, Puerto Rico
Department of Justice, were on brief, for appellant.
    Joan S. Peters, with whom Andrs Guillemard-Noble and Nachman,
Guillemard & Rebollo were on brief, for appellee.

                      ____________________

                      September 11, 1998
                     ____________________

         SCHWARZER, Senior District Judge.  In an effort to attack
the mounting problem of solid waste disposal, the Puerto Rico
legislature in 1996 enacted the Tire Handling Act, also known as
Law 171.  This act establishes a comprehensive scheme for the
handling and disposal of used tires.  Among other things, it
requires tire vendors to accept customers' used tires at no extra
charge for processing or disposal, prohibits the burning of tires
and depositing of tires in landfills except under certain
conditions, regulates the storage and recycling of tires,
establishes import fees, sets up a fund for handling scrap tires,
creates incentives for recycling and developing alternative uses
for scrap tires, and imposes penalties for noncompliance with its
provisions.  The legislature identified the disposal of tires as a
particular problem because of the fire hazard they present, the
public health hazard they create from disease-carrying mosquitoes
breeding in water that accumulates inside discarded tires and the
large amount of space they occupy, diminishing the useful life of
landfills.
         Used Tire International, Inc. ("UTI") is an importer of
used tires into Puerto Rico.  It brought this action for
declaratory and injunctive relief against appellant Manuel Daz-
Saldaa as Secretary of the Treasury to bar enforcement of certain
provisions of Law 171.  Those provisions are:  Article 5(B) which
prohibits the import of tires that do not have a minimum tread
depth of 3/32"; Article 5(D) which requires tire importers to file
a bond in an amount equivalent to the cost of handling and
disposing of the imported product and provides for execution of the
bond in the event that 10% of a representative sample of a shipment
does not qualify; Article 6 which imposes a charge on all imported
tires; Article 17(A)(1) which provides for distributions from a
tire handling fund, created from the charge imposed on importers of
tires, to recyclers, processors and exporters of tires; and Article
19(A) which imposes a $10.00 fine on persons selling or importing
tires that do not have a minimum tread depth of 3/32."  Following
a hearing on UTI's request for a preliminary injunction at which
both sides presented testimony, the district court issued an
opinion and order, granting the injunction against enforcement of
Articles 5(B), 5(D) and 19(A) and denying it with respect to
Articles 6 and 17(A)(1).  Puerto Rico appealed the order and UTI
cross-appealed.  The parties have stipulated that we may treat
Puerto Rico's appeal as being from a final adjudication of the
invalidity of Articles 5(B), 5(D) and 19(A).  We have jurisdiction
under 28 U.S.C.  1331 and 1292(a)(1).
                     PUERTO RICO'S APPEAL  
         The district court concluded that Articles 5(B) and 19(A)
facially discriminate against interstate commerce by banning the
importation of a class of tires that may be legally sold and used
in Puerto Rico.  In reaching that conclusion it rejected the
Secretary's argument that Law 171 is non-discriminatory because the
3/32" requirement applies equally to importers and sellers of used
tires.  The argument was premised on the first sentence of Article
19(A) which states:
           Every person who sells or imports tires
           . . . that do not have a minimum depth of
           3/32" . . . shall pay a fine of $10.00 per
           tire.

The court rejected this interpretation of the statute as
implausible on the strength of the second sentence of Article 19(A)
which states:
           This provision shall apply to those who
           fail to comply but have not had their bond
           executed, according to what is pointed out
           in Article 5(D) [which requires all tire
           importers to post a bond].

It read that provision as making the penalty applicable only to
those who have filed bonds, i.e., importers of used tires.   
         We agree with the district court's interpretation.  The
reference to "those . . . who have not had their bond executed" and
the cross-reference to Article 5(D) dealing with importers of used
tires makes it clear that only those sellers of used tires who are
also importers are the subject of Article 19(A).  Moreover, as UTI
points out, it would make little sense for the legislature to
penalize sellers of noncomplying used tires taken in trade-in
(i.e., locally-generated used tires) for to do so would simply
accelerate the time when used tires are discarded as scrap and
dumped in a landfill.  On appeal, the Secretary merely reiterates
that the penalty applies equally to sellers and to importers but
has offered "only rhetoric, and not explanation."  See Chemical
Waste Management, Inc. v. Hunt, 504 U.S. 334, 343 (1992).  We
conclude, therefore, that Article 19(A) discriminates against
sellers of imported used tires because only they and not sellers of
locally-generated used tires are subjected to the penalty and,
consequently,  that Article 5(B) discriminates against importers of
used tires because Law 171 singles them out in barring the import
of tires with less than 3/32" tread depth.
    The district court, having concluded that Articles 5(B)
and 19(A) are invalid, did not reach the bonding requirement under
Article 5(D).  That article provides that "[e]very tire importer
shall file . . .  a bond . . . equivalent to the total cost of the
handling and disposal of the imported product.  Should more than
10% of a representative sample of a shipment of imported tires
fail[] to meet [the 3/32" standard] . . . the totality of the bond
shall be executed."  Plainly the bonding requirement imposes
burdens, costs and risks on importers of used tires not borne by
sellers of locally-generated used tires and thus provides added
support for the conclusion that Articles 5(B), 5(D) and 19(A)
together facially discriminate against interstate commerce.
    The inexorable increase in the volume of solid wastes and
the health and environmental consequences attendant on their
disposal present legislatures and courts with vexing problems.  SeePhiladelphia v. New Jersey, 437 U.S. 617, 630 (1978) (Rehnquist,
J., dissenting).  We may assume that Puerto Rico's purpose in
enacting Law 171 was to serve the best interests of all its
citizens.  But no matter how laudatory its purpose, "it may not be
accomplished by discriminating against articles of commerce coming
from outside the [Commonwealth] unless there is some reason, apart
from their origin, to treat them differently."  Id. at 626-27.  In
Philadelphia, the Supreme Court struck down a New Jersey statute
that prohibited the importation of waste originating out of state.  
The crucial question, the Court said, was whether the statute was
"basically a protectionist measure, or whether it can fairly be
viewed as a law directed to legitimate local concerns, with effects
upon interstate commerce that are only incidental."  Id. at 624.  
To answer that question, the Court saw no need to resolve the
dispute between the parties whether the purpose was to serve
parochial economic interests or to save the environment for "the
evil of protectionism can reside in legislative means as well as
legislative ends."  Id. at 626.  New Jersey's law, it held, fell
within the area that the Commerce Clause puts off limits to state
regulation because it "imposes on out-of-state commercial interests
the full burden of conserving the State's remaining landfill
space."  Id. at 628.
    Puerto Rico's legislation barring the importation of
certain used tires is essentially indistinguishable from New
Jersey's.  It, too, places the burden of conserving its landfill
space on those engaged in interstate commerce, the importers of
used tires.  And it is essentially indistinguishable from the
Alabama statute imposing an additional disposal fee on wastes
generated outside the state, struck down in Chemical Waste.  Seealso Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of
Natural Resources, 504 U.S. 353 (1992) (striking down statute
barring disposal of solid waste generated in another county);
Trailer Marine Transp. Corp. v. Rivera Vzquez, 977 F.2d 1, 10 (1st
Cir. 1992).  The costs associated with the required bond and the
penalty upon the sale of noncomplying imported tires, moreover,
resemble a tariff on goods that may be lawfully sold in the state
because they are imported from another state, "[t]he paradigmatic
example of a law discriminating against interstate commerce."  West
Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 193 (1994).  Because
the Secretary has failed to come forward with a showing that
Articles 5(B), 5(D) and 19(A) advance a legitimate local purpose
that cannot be adequately served by reasonable nondiscriminatory
alternatives, see New Energy Co. v. Limbach, 486 U.S. 269, 278
(1988), they cannot withstand scrutiny under the Commerce Clause.
                       UTI'S CROSS-APPEAL
    UTI cross-appeals from the district court's denial of
injunctive relief against enforcement of Articles 6 and 17.  We
review the denial of a preliminary injunction for abuse of
discretion.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,
102 F.3d 12, 16 (1st Cir. 1996).  The appealing party "bears the
considerable burden of demonstrating that the District Court
flouted" the four-part test for preliminary injunctive relief.  
E.E.O.C. v. Astra USA, Inc., 94 F.3d 738, 743 (1st Cir. 1996).  
That test requires plaintiff to show probability of success on the
merits as well as irreparable injury, the balance of harm tipping
in plaintiff's favor, and absence of adverse effect on the public
interest.  See, e.g., Starlight Sugar, Inc. v. Soto, 114 F.3d 330,
331 (1st Cir. 1997).
    Article 6 imposes a charge on each imported tire, whether
new or used, varying with the dimension of the wheel rim.  The
revenue received from this charge is placed in an Adequate Disposal
Tire Handling Fund, created under Article 17, to subsidize the cost
of processing and recycling used tires.  The district court held
that Article 6 does not discriminate against interstate commerce
because the charge is imposed on all tires entering Puerto Rico, no
tires being manufactured in Puerto Rico.  See Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 125 (1978).   UTI argues that
the charge discriminates because it is not imposed on locally-
generated tires.  Those tires, of course, pay the charge when they
enter Puerto Rico as new tires.  The district court found that
those tires nevertheless enjoy an economic advantage because the
charge is not passed on in the price of locally-generated used
tires.  Whatever the basis for that finding, we find nothing
discriminatory in a one-time charge imposed on the importation of
every tire, new or used.  The only used tires that may enjoy an
advantage are those that were imported new or used before Law 171
became effective (some of which were presumably imported by UTI).  
But their advantage is temporary and is the result, not of
discrimination, but, rather, of the inevitable phasing in of the
new law.  Because we find that Article 6 "regulates evenhandedly to
effectuate a legitimate local public interest, and its effects on
interstate commerce are only incidental," Pike v. Bruce Church, 397
U.S. 137, 142 (1970), we affirm the district court's ruling denying
injunctive relief.
    Article 17(A)(1) provides for the distribution out of the
Adequate Disposal Tire Handling Fund of the revenue derived from
the import charge.  Out of the revenue collected, handlers of tires
to be processed or recycled in Puerto Rico are to receive a maximum
of 91% of the handling and disposal fee and exporters up to 46%.  
UTI contends that this provision facially discriminates against
tire exporters.  The district court found, and it is not disputed,
that UTI is not a scrap tire exporter and thus not hurt by the law.  
Accordingly, it lacks standing to attack this article.  See Lujanv. Defenders of Wildlife, 504 U.S. 555, 560-61 (1994).
    UTI seeks to avoid its disability by arguing that Article
17 together with Article 6 create a tax-subsidy program similar to
that found to be invalid in West Lynn Creamery, Inc. v. Healy, 512
U.S. 186 (1994).  West Lynn struck down a Massachusetts milk
pricing order which imposed an assessment on all milk sold by
dealers in Massachusetts, two-thirds of which came from out of
state, and then distributed all of it to Massachusetts dairy
farmers.  Even though the assessment and the subsidy, separately,
could be lawfully enacted, together they constituted a scheme under
which out-of-state producers were required to subsidize competition
by local high cost dairy farmers, neutralizing advantages possessed
by lower cost out-of-state producers.  Id. at 194.  The Puerto Rico
import charge is distinguishable because it does not subsidize
local dealers at the expense of those engaged in interstate
commerce.
                           CONCLUSION
    We therefore AFFIRM the district court's order respecting
injunctive relief.

</body>

</html>